Adam P. Bailey (CA Bar No. 278208)
Richard J. Frye (CA Bar No. 338369)
Hobbs, Straus, Dean & Walker, LLP
1903 21st St., 3rd Floor
Sacramento, CA  95811
Phone: (916) 442-9444
Fax: (916) 442-8344
Email: abailey@hobbsstraus.com
rfrye@hobbsstraus.com
*Attorneys for Picayune Rancheria of Chukchansi Indians dba Chukchansi Indians Gold Resort & Casino*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS dba CHUKCHANSI GOLD RESORT & CASINO, INC.**<br><br>PLAINTIFF,<br><br>v.<br><br>**UNITE HERE LOCAL # 19**<br><br>DEFENDANT. | Case No. _____ [Judge Initials]<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>Judge:<br>Dept.:<br>Action Filed:<br><br>Ex Parte Calendar:<br>July __, 2025<br>[Time] |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Unite Here Local #19 ("Union") has initiated a strike of its members employed at the Picayune Rancheria of Chukchansi Indians' ("Tribe") Chukchansi Gold Resort &

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 1

Casino ("CGRC") while collective bargaining negotiations are ongoing and have not yet reached an impasse, making such striking activity in violation of the Tribe's Tribal Labor Relations Ordinance ("TLRO") and the Tribe's Tribal-State Gaming Compact ("Compact").  The Union is also engaged in strike-related picketing on Tribal-Lands, which is also a violation of the TLRO.  Further, the Union has refused to comply with the Tribe's ordinance requiring permitting for public assemblies and demonstrations.

The Tribe has asked the Union to comply with the TLRO and the tribal ordinance, but it has refused.  The Tribe has asked the Sheriff for assistance in enforcing the TLRO and ordinance, but he stated he will not do so without a court order. The Tribe seeks declaratory relief in its efforts to enforce the tribal ordinances against the non-member Union and employees. The Tribe therefore seeks injunctive relief against the Union, damages, and declaratory relief that the Tribe's ordinances regulating non-Indians on the Tribe's trust lands are within tribal authority and thus enforceable according to the Tribe's efforts.

## PARTIES

**Plaintiff**

1. The Picayune Rancheria of Chukchansi Indians is a federally recognized Indian tribe.  The Tribe operates the Chukchansi Gold Resort & Casino, located at 711 Lucky Lane, Coarsegold, CA 93614, and employs members of the Defendant Union.  The Tribe's principal place of business is 49260 Chapel Hill Drive, Oakhurst, CA 93644.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 2

**Defendant**

2. Unite Here Local #19 is a local affiliate of Unite Here, an international labor union. The Union represents over 8,500 workers employed at hotels, restaurants, airports, sports arenas, and convention centers throughout Northern California. As relevant here, the Union represents roughly half of Chukchansi Gold Resort & Casino's employees.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the parties and matters alleged in this Complaint under federal common law arising from the Tribe's efforts and claim for enforcement of tribal laws against non-Indian defendants. A tribe's request to enforce its ordinances against non-Indians on tribal lands arise "under federal law, within the meaning of 28 U.S.C. §§ 1331 and 1362." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1077 (9th Cir., 1990); *see also*, *Chilkat Indian Village v. Johnson*, 870 F.2d 1469, 1475 (9th Cir. 1989) (the extent of a tribe's sovereign authority to regulate non-Indians is determined by federal common law).

4. Venue is proper in the Federal District Court of California, Eastern District, because the occurrences giving rise to this action occur on lands held by the federal government in trust for the Tribe located within this court's territorial jurisdiction.

5. The Court has jurisdiction to enter the judgment and relief sought by this Complaint.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 3

## FACTUAL ALLEGATIONS

6. The CGRC is an arm of the Tribe and is owned and operated by the Chukchansi Economic Development Authority, which is a subdivision of the Tribe.

7. As pursuant to its federally required State-Tribal Gaming Compact, the Tribe enacted a Tribal Labor Relations Ordinance ("TLRO") to be in effect at the initiation of the Compact on September 10, 1999.

8. The Compact and the TLRO have been amended in irrelevant parts, and both are still in effect.

9. The TLRO governs labor relations between the CGRC and its employees.

10. The TLRO prohibits the Union from striking unless there is an impasse in bargaining negotiations.

11. The TLRO prohibits any "strike-related picketing" on the Tribe's Indian lands as defined by 25 U.S.C. § 2703(4).

12. The Union is the recognized bargaining unit for union members who are employed at CGRC.

13. The Tribe and the Union were parties to a collective bargaining agreement that expired on December 31, 2024.

14. Since January 2025, CGRC and the Union have been engaged in negotiations for a new collective bargaining agreement, engaging in at least three (3) total negotiation sessions between January and June of 2025.

15. In June 2025, CGRC and the Union each replaced their lead negotiators.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 4

16. On June 9, 2025, CGRC and the Union held a preliminary Zoom call to make introductions and resume negotiations.

17. CGRC and the Union then held in-person negotiations for one (1) day on June 23, 2025, and again for two (2) days on July 1 and 2, 2025.

18. Since replacement of each side's lead negotiators, CGRC and the Union have exchanged four (4) rounds of offers across the three above-mentioned negotiation sessions in June and July.

19. CGRC and the Union have made, and are continuing to make, significant progress in negotiations spanning dozens of issues, including paid time off, sick leave, family leave, bereavement leave, and the handling of tips.

20. Nevertheless, in response to a wage offer from CGRC that it deemed unacceptable, at about 3:00 p.m. on the afternoon of July 2, 2025, the Union's representative cut off negotiations and gave notice to CGRC that Union members would begin striking at 5:00 p.m. on the evening of July 3, 2025, if the Union did not by then receive a wage offer it deemed acceptable.

21. Subsequently, CGRC requested a counteroffer regarding wages.

22. The Union did not provide the Tribe with a counteroffer regarding wages.

23. CGRC's negotiator contacted the Union's negotiator on July 11, stating that the Casino was interested in restarting discussions, and again requesting a counteroffer.

24. At 2:44 a.m. on July 12, 2025, the Union representatives informed CGRC that the Union members would begin a strike at 3:00 a.m. on July 12, 2025, lasting until midnight on Tuesday, July 15, 2025.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 5

25. At 3:00 a.m. on July 12, 2025, the Union's members who are employed by CGRC walked out and began striking.

26. Union members have begun picketing on Casino property (located on the Tribe's Indian lands) as of 4:00 a.m. on July 12, 2025.

27. On Saturday, July 12, counsel for the tribe requested that the Union cease striking and picketing activity that contravened the TLRO, and that the Union comply with the Tribe's public assembly permitting ordinance.  The Union has not responded and continues to strike and picket.

28. On Saturday, July 12, the Tribe and counsel contacted Madera County, California sheriff Tyson Pogue, requesting that the Sheriff assist the Tribe in enforcing its ordinances against the union and employees.  The Sheriff refused to do so without a court order.

29. The Tribe does not have a police force, and this request for declaratory relief that the Tribe's ordinances are valid and enforceable is necessary to give effect to duly enacted tribal laws.

30. Plaintiff asserts a bond is not necessary in this case, as neither the Union nor any represented employees will suffer financial harm in the event the strike and/or picket is enjoined.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

31. The Tribe incorporates paragraphs 1 through 30as though fully set forth herein.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 6

32. An actual controversy has arisen between Plaintiff and Defendant. Plaintiffs have requested that Defendants comply with duly enacted tribal laws, namely the TLRO and Tribal Ordinance 2025-003 requiring application for permits for public assembly and demonstration. The Tribe asserts that these laws are within the Tribe's inherent authority to enact and enforce, particularly given that the Tribe seeks to enforce them on tribal lands over non-Indians present on the reservation. Defendants have refused to comply with these laws. The county Sheriff has refused to assist the Tribe in enforcing the laws without a court order. The Tribe has no other means to enforce its own laws on its own lands.

33. A judicial declaration that the Tribe's laws are valid and enforceable at this time because Defendants are violating those laws at present, and given that negotiations are ongoing, are likely to do so again in the future.

34. Pursuant to Section 11(b) of the TLRO, "[i]f collective bargaining negotiations" between the Tribe and the Union "result in impasse, the [U]nion shall have the right to strike"—but only then shall the Union have such a right.

35. An "impasse" is generally understood to be "that point at which the parties have exhausted the prospects of concluding an agreement and further discussions would be fruitless." *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 543 n.5 (1988) (quoting *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 779 F.3d 497, 500 n.3 (9th Cir. 1985)). When considering whether negotiations have hit an "impasse," "courts look to such matters as the number of meetings between the company and the union, the length

of those meetings and the period of time that has transpired between the start of negotiations and their breaking off.  There is no magic number of meetings, hours or weeks which will reliably determine when an impasse has occurred." *Id.*

36. Here, there has been no impasse.  The negotiations did not stall, there was no stalemate, the prospects of concluding an agreement were not exhausted, and further discussions would not have been fruitless.  To the contrary, significant progress has been made on a number of items even in the short time that has elapsed since the new lead negotiators assumed their respective positions, and there is nothing to suggest further progress will not continue to be made so long as both sides engage in the negotiations in good faith.  Indeed, Defendants have indicated they are available for negotiations on July 15 and 16, or during the week of July 28, 2025.

37. Instead of negotiating in good faith, the Union disagreed with a wage offer from CGRC and, rather than provide a counteroffer, demanded a particular result and threatened to strike.  When the Tribe did not yield in short order to the Union's demanded result, the Union did indeed strike—also choosing to do so on a weekend, which days represent increased activity as compared to weekdays.

38. In doing so, the Union clearly violated the terms of Section 11 of the TLRO by initiating a strike when negotiations had not resulted in impasse—and thus without a right to do so—and the Tribe is therefore entitled to injunctive relief to stop the Union's unlawful strike.

39. The Union has further violated the TLRO by engaging in strike-related picketing on Tribal lands.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 8

**PRAYER FOR RELIEF**

WHEREFORE, the Tribe prays for relief as follows:

40. For a declaration that the Tribe's TLRO and Ordinance 2025-003 are valid enactments of law based on a tribe's inherent sovereign authority, and that such ordinances may be enforced against non-members (including the Union and employees) on the Tribe's trust lands.

41. Enter a temporary restraining order and preliminarily enjoin the Defendants from continuing to strike in violation of the TLRO.

42. Enter a temporary restraining order and preliminarily enjoin the Defendants from carrying out strike-related picketing on the Tribe's Indian lands.

43. Enter a permanent injunction directing the Union not to strike unless and until collective bargaining negotiations result in impasse.

44. Enter a permanent injunction on any strike-related picketing on the Tribe's Indian lands.

45. Retain jurisdiction and maintain the status quo until negotiations between Plaintiff and Defendant have concluded or until the parties determine there is an actual impasse.

46. Award damages to be determined as supported by evidence and proven at trial.

47. Award such other and further relief as the Court may determine is appropriate, just, and proper.

Respectfully Submitted,

Adam P. Bailey
Richard J. Frye
Hobbs, Straus, Dean & Walker, LLP
*Attorneys for Picayune Rancheria of Chukchansi Indians dba Chukchansi Indians Gold Resort & Casino*

By: /s/ Adam P. Bailey
Adam P. Bailey (CA Bar # 278208)
Richard J. Frye (CA Bar # 338369)
HOBBS, STRAUS, DEAN & WALKER, LLP
1903 21st Street, 3rd Floor
Sacramento, CA 95811
Phone: 916-442-9444
Fax: 916-442-8344
E-mail: abailey@hobbsstraus.com
rfrye@hobbsstraus.com

DATED: July 13, 2025

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 10